UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE, a minor, by her next
friend and parent, DEA GOODMAN,

|  |  |  |
|---|---|---|
| Plaintiff, | ) | Case No. 2:17-cv-10370 |
| | ) | |
| vs. | ) | Hon. |
| | ) | |
| WARREN CONSOLIDATED | ) | |
| SCHOOLS, THERESA | ) | |
| CALLAHAN, ROBERT D. | ) | |
| LIVERNOIS, and ELIANORE L. | ) | |
| EVANS, | ) | |
| | ) | |
| Defendants. | ) | |

---

Jennifer B. Salvatore (P66640)
Julie B. Porter (IL 6243787)
SALVATORE PRESCOTT & PORTER, PLLC
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
*salvatore@spplawyers.com*
*porter@spplawyers.com*

---

## **COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, JANE DOE, a minor, through her next friend and by and through her attorneys, SALVATORE PRESCOTT & PORTER, PLLC, and hereby complains of Defendants WARREN CONSOLIDATED SCHOOLS,

1

THERESA CALLAHAN, ROBERT D. LIVERNOIS,  and ELIANORE L. EVANS, as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Jane Doe is a minor who resides in Sterling Heights, Michigan. At the time of the sexual assault described in this Complaint, plaintiff was 15 years old and was a freshman at Cousino High School.

2.      Defendant Warren Consolidated Schools is a public school district located in Warren, Michigan.

3.      Defendant Theresa Callahan is an individual who resides within the Eastern District of Michigan.  At times relevant to this Complaint, she was Assistant Principal at Cousino High School.

4.      Defendant Robert D. Livernois is an individual who resides within the Eastern District of Michigan.  At times relevant to this Complaint, he was Superintendent of the Warren Consolidated Schools.

5.      Defendant Elianore L. Evans is an individual who resides within the Eastern District of Michigan.  At times relevant to this Complaint, she was Executive Director, Student and Family Liaison for Warren Consolidated Schools.

6.      This Complaint refers to the student who sexually assaulted Jane Doe as "John Roe."  John Roe was a senior at Cousino High School when he assaulted

Jane Doe.  Upon information and belief, he graduated from the high school in or about May 2015 and went on to attend college.

7.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which grants district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

8.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over: (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom, or usage, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

9.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because all defendants reside in this district, and the events giving rise to the claims occurred in this district.

## APPLICABLE LAW AND POLICY

10.    Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), states:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...

11.    Title IX is implemented through the Code of Federal Regulations. *See* 34 C.F.R. Part 106. 34 C.F.R. § 106.8(b) provides:

...A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

12.    In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

13.    In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in *Gebser* to cases where the harasser is a student, rather than a teacher.

14.    *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is:

a) deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and

4

    b) the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

*Davis*, 526 U.S. at 1669-76.

15.    The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

16.    At MCL 380.1311(2), Michigan law provides that "If a pupil...commits criminal sexual conduct in a school building or on school grounds, the school board, or the designee of the school board...shall expel the pupil from the school district permanently."

17.    Warren Consolidated Schools published a Student Code of Conduct, dated August 2014, that was in force at times material to this Complaint. The Code prohibited misconduct, including sexual assault, sexual harassment, and sexual misconduct. Sexual harassment was defined to include unwelcome sexual advances, subtle or overt pressure for sexual activity, and engaging in improper physical contact. Sexual misconduct was defined to include the intentional touching or displaying of one's own or another person's intimate parts or the intentional touching of the clothing or other material covering the immediate area of one's own or another person's intimate parts.

18.     Under the Code, sexual assault, sexual harassment, and sexual misconduct were deemed "major infractions," which could result in a range of disciplinary actions from suspension to expulsion.

19.     The Code also specified "minor infractions," to include improper dress and appearance, irregular attendance, and tardiness.   Under the Code, minor infractions could result in a range of disciplinary actions from reprimand to a one-to-five-day suspension.

20.     The Code promoted progressive discipline.  Specifically, Section IV.A. of the Code stated, "The staff will make reasonable effort to solve student behavior problems in the school.  If the building administrator feels this cannot be done, the student may be kept out of school."  The Code prescribed four phases of disciplinary action: (1) temporary suspension (up to ten days); (2) extended suspension (longer than ten days but no longer than the length of a school year); (3) snap suspension (referring to a teacher's ability to suspend a student from class for up to one school day); and (4) expulsion.  As to expulsion, the Code stated:

> Permanent exclusion may be ordered by the Board of Education upon the recommendation of the Administration.  In addition to mandatory expulsion for certain state law offenses, students may be expelled for serious offenses and major infractions, including situations where the student's continued presence in the school is detrimental to the health, safety, rights of others, and school environment.

21.    The Code stated that "[i]n each student's case, consideration will be given to age, experience, and abilities.  Past incidents of misconduct will be carefully noted when dealing with a student regarding a current conduct violation."

22.    The Code declared the Warren School District's compliance with Title IX, and stated, "The designated coordinator for educational programs and employment matters is the Chief Human Resources Officer."

23.    Warren School District also recognized students' rights, including the right to:

- Attend school in the district in which his/her parent or legal guardian resides.
- Attend school until graduation from high school at public expense.
- Obtain free textbooks and supplies needed in the course of study….
- Assist in the making of decisions affecting his/her life in school.
- Express his/her opinions verbally or in writing.
- File an appeal with the appropriate school official when wrongly accused of misconduct.
- Dress in such a way as to express his/her individuality.
- Be afforded a fair hearing with the opportunity to call witnesses in his/her own behalf and to appeal his/her case in event of disciplinary action.
- Expect that where he/she reports information as a secret witness, his/her anonymity will be honored by the school.
- Expect that the school will be a safe place for all students to gain an education.

## FACTUAL ALLEGATIONS

24.    In fall 2014, Jane Doe entered Cousino High School as a freshman.  She was a normal student who enjoyed classes, had friends, and engaged in the ordinary activities of a high schooler, such as attending athletic events and school dances.

25.    Toward the beginning of her freshman year, Jane Doe met John Roe, a senior.  John Roe was a star athlete at the school.  He played on the school's basketball and football teams and ran track.

26.    Jane Doe and John Roe exchanged messages via a social-media application.  John Roe presented himself as very friendly.  From time to time, he flirted with Jane Doe.

**Parking Lot Incident on May 13, 2015**

27.    On or about May 13, 2015, when John Roe was 18 and Jane Doe was 15 (below the age of consent in Michigan), John Roe approached Jane Doe at her locker and asked if she wanted to go with him to his car to "chill."  Jane Doe agreed to go with him.

28.    John Roe led Jane Doe to the school parking lot, where he got into the backseat of a car.  Jane Doe got in the backseat next to him.  John Roe locked the doors and looked down at his phone.

29.    John Roe then said to Jane Doe, "I'm hard," referring to his penis.  He unbuckled his pants, pushed them partway down, and said to Jane Doe, "Suck my dick."

30.    Jane Doe started to comply with John Roe's demand, but then told him it was "gross" and that she wanted to stop.  John Roe said, "Oh well," and then he forcibly pushed Jane Doe's head down toward his lap and forced her mouth onto his

8

penis.  John Roe pushed his penis into Jane Doe's mouth.  Jane Doe struggled, said no multiple times, and eventually was able to use her hand to push John Roe away. Jane Doe said "I'm done," left the car, and went back inside the school.

31.    Jane Doe was embarrassed and afraid by what had just happened to her. She felt like she had frozen during the incident and that her mind had gone blank. She went directly to her first-period class.  All day, Jane Doe felt on edge: she was sad, she was angry, she was confused.

**The School Questions Jane Doe**

32.    Two days later, on or about May 15, 2015, Jane Doe was called to the office.  Defendant Theresa Callahan, the Assistant Principal, told Jane Doe that there were rumors about Jane Doe and John Roe.  Defendant Callahan asked if the rumors were true.  Defendant Callahan said that the school had video proof that Jane Doe left the building during school hours.  Jane Doe told defendant Callahan that John Roe forced himself on her and that she tried to get away.  Defendant Callahan responded by criticizing Jane Doe's clothing, intimating that Jane Doe invited unwanted sexual attention because of the way she dressed.  Defendant Callahan did not ask how Jane Doe was doing, or whether she needed medical or psychological attention.  She did not mention Title IX or refer Jane Doe to the School's Title IX Coordinator.

33.    Instead, Defendant Callahan took Jane Doe to see a counselor at the school.  Defendant Callahan and the counselor told Jane Doe that she could be expelled from school.  Defendant Callahan gave Jane Doe a "Witness Statement" form and instructed her to fill it out.  Jane Doe wrote:[1]

> On Wednesday May 13th 2015 [John Roe] …senior. I was at my locker preparing for class.  This had been before the minute bell rang. I seen him coming towards my locker. [Another boy] was around him. He approached me. I had shut my locker, started walking with him. He said let's go to my car to chill.  Never did I think anything sexual was bound to happen.  We walked to the doors to leave the building close to the gym doors.  We get out to his car.  I [sit] in the back behind the passenger seat, he got in the driver's seat.  I was real [quiet] at first.  I noticed the doors are locked, he was looking down at his phone.  Idk [I don't know] what he was doing, he seemed to be texting someone.  He said to me I'm hard.  I was like [] shocked, weirded out.  Whatever etc.  Well he unbuckled his pants, he said you know what to do.  I'm in shock.  He said exactly, suck my dick. Very exact.  So I started, his hand was on my butt under clothing, he touched [] my boobs.  I said stop this is gross, nasty etc.  He said oh well, took his left hand, put it on the back of my head and put my mouth on his penis.  And pushed it to move faster.  I eventually was able to remove his hand with my right hand and said I'm done.  I exited the vehicle and checked in to [school].

34.    Jane Doe was not permitted to talk to her parents before being questioned, nor was she given the opportunity to have her parents present while being questioned.  Defendant Callahan called Jane Doe's mother after the May 15 questioning and said that Jane Doe could not return to school.

---

[1] For clarity, punctuation has been added that does not appear in the original statement.

35.     After being questioned by school authorities—and especially after being threatened with expulsion—Jane Doe was nervous and afraid.  She reached out to John Roe and told him, falsely, that she hadn't said anything to the school administrators.  She did not want him to retaliate against her, or to spread false rumors about her.

**The School Questions John Roe, Who Denies Culpability**

36.     On information and belief, school administrators did not call John Roe into the office or question him on May 15, 2015.  Instead, he was permitted to participate in a track meet for the school that afternoon.

37.     Approximately four days later, the school took a statement from John Roe.  In the statement, John Roe claimed that he and Jane Doe had planned to engage in sexual activity and that the oral sex was consensual.  On information and belief, John Roe was interviewed with advance notice and with at least one parent present.

**Without Further Investigation, The School Expels Jane Doe**

38.     Without any further investigation or inquiry, the school commenced expulsion proceedings against Jane Doe.  The school asked Jane Doe no further questions after speaking to John Roe.  On June 29, 2015, the District expelled Jane Doe.

39.    Jane Doe appealed her expulsion.  At the hearing, panelists asked Jane Doe questions such as "Do you feel remorseful for your actions?" and told her not to "let this incident define you."  The review panel upheld Jane Doe's expulsion.

40.    Upon information and belief, at the time of the incident involving Jane Doe and John Roe, the District was aware of at least one other allegation of non-consensual sexual contact made against John Roe by a younger female student.

41.    John Roe was not expelled from the District and received his diploma shortly after the incident.  He now attends college in Ohio.

**Jane Doe Has Suffered Significantly Over the Past Year**

42.    After her expulsion, Jane Doe had to attend school during her sophomore year at home through an online virtual academy.  She received no credit for the classes she had been enrolled in during the spring of her freshman year and thus had to retake those classes in the 2015/2016 academic year.  Following her sophomore year, Jane Doe's family moved so that she could attend school in another district.  However, Jane Doe learned upon registering for classes in the fall of 2016 (her junior year) that she did not have enough credits to register for her junior year, and thus had to attend an alternative school to complete those credits.  Most of the students who attend the alternative school are there because of behavioral or disciplinary issues.

43.     The loss of educational opportunities and the exclusion from the normal public school experience has had devastating academic and emotional consequences for Jane Doe.  She has been in counseling for depression, her grades have suffered, and she has missed out on social opportunities and the support of a peer community for the better part of her high school experience.

44.     Since the day of the assault, Warren Consolidated Schools has failed to identify to Jane Doe or her parents the school's Title IX Coordinator, has failed to explain to Jane Doe or her parents Jane Doe's rights under Title IX, has failed to offer counseling services, and has failed to take any measure to provide Jane Doe with a safe and effective school environment.

45.     Jane Doe was subjected to sex-based discrimination by the Defendants.

46.     The sex-based discrimination has deprived Jane Doe of access to the educational opportunities and benefits of her school.  She has been deprived of a normal childhood education due to defendants' conduct and the resulting educational environment.

47.     Warren Consolidated Schools, and those who acted on its behalf, including defendants Theresa Callahan, Robert D. Livernois, and Elianore L. Evans, had the authority to take remedial action to correct the sex-based discrimination.

48.     Jane Doe was not allowed to return to school, was denied appropriate assistance for online classes and other schoolwork, was not allowed on campus to

socialize and participate in school activities, was denied the opportunity for a normal sophomore year in high school, and was denied her right to a free and appropriate public education.

49.     Jane Doe required mental-health counseling to cope with the sexual assault and the isolation that resulted from her expulsion.

50.     As a direct and proximate result of the Defendants' actions, Jane Doe has suffered and continues to suffer psychological damage, emotional distress, loss of standing in her community, and damage to her reputation.  Her future relationships have also been negatively affected.

51.     Defendants' handling of this matter will chill other, similarly situated students from reporting sexual assault in the future.  Instead of being protected, Jane Doe was attacked and expelled from school for reporting a sexual assault.

### Responsibility for Title IX Violations

52.     At times material to this Complaint, the Warren Consolidated Schools received federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq.*

53.     Warren Consolidated Schools was responsible for ensuring that its employees and those acting as its agents were properly trained and supervised to perform their assigned functions to comply with the law.

54.     Warren Consolidated Schools was responsible for all acts and omissions of its employees and agents.

14

<u>**COUNT I**</u>
**VIOLATION OF TITLE IX**
**AS TO DEFENDANT WARREN CONSOLIDATED SCHOOLS**
**(Sex Discrimination)**

55.     Paragraphs one through 54 are incorporated here.

56.     The District engaged in sex discrimination when it failed to treat Plaintiff's allegations of sexual assault as a Title IX matter and when it treated Plaintiff Jane Doe (a female) differently than John Roe (a male) in its handling of the incident. For example, the District:

   a)     Interviewed Jane Doe immediately and without her parents present while it waited several days to interview John Roe and allowed his mother to be present;

   b)     Immediately suspended Jane Doe while it allowed John Roe to participate in a track meet the same day that the assault was reported; and

   c)     Expelled Jane Doe and not John Roe, and allowed John Roe to graduate while Jane Doe has not been able to return to school in the District.

57.     In addition, the District engaged in sex discrimination in violation of Title IX in that it failed to provide any information on Title IX to Jane Doe and failed to conduct any Title IX investigation of this matter; and also failed to provide any

interim or other measures to Jane Doe to ensure her education would not be harmed as a result of the assault.

58.     Jane Doe has suffered damages, including financial damages, emotional distress and psychological harm.  Her education and future employment prospects have been harmed and her character and standing in the community have suffered from the sex discrimination she has experienced.

**COUNT II**
**VIOLATION OF TITLE IX AS TO**
**DEFENDANTS WARREN CONSOLIDATED SCHOOLS**
**(Retaliation)**

59.     Paragraphs one through 58 are incorporated here.

60.     The District engaged in retaliation when it expelled Plaintiff after she reported a sexual assault by another student—conduct which is protected activity under state and federal law.

61.     Jane Doe has suffered damages, including financial damages, emotional distress and psychological harm.  Her education and future employment prospects have been harmed and her character and standing in the community have suffered from the retaliation she has experienced.

## COUNT III
### SECTION 1983 VIOLATION AS TO
### DEFENDANTS WARREN CONSOLIDATED SCHOOLS,
### CALLAHAN, LIVERNOIS, AND EVANS
### (14th Amendment)
### (42 U.S.C. § 1983)

62.     Paragraphs one through 61 are incorporated here.

63.     Under the Fourteenth Amendment, Jane Doe had the right as a public school student to personal security, bodily integrity, and equal protection of the law.

64.     Defendants Callahan, Livernois, and Evans were state actors, acting under color of state law.

65.     Defendants subjected Jane Doe to violations of her right to personal security, bodily integrity, and equal protection of the law by failing to adequately train and supervise District staff regarding their Title IX obligations and manifesting deliberate indifference to the sexual assault and harassment of Jane Doe.

66.     Warren Consolidated Schools had and continues to have unconstitutional policies and practices, namely:

- failing to investigate evidence of sexual misconduct against female students; and
- failing adequately to train and supervise Warren Consolidated Schools employees and agents with regard to protecting female students from violations of their right to personal security, bodily integrity, and equal protection of the law.

17

67.     On information and belief, Warren Consolidated Schools has followed these unconstitutional policies and practices not only with regard to Jane Doe but also with regard to sexual misconduct committed against other female students.

68.     The school's policies and practices constituted disparate treatment of females and had a disparate impact on female students.

69.     At the time of the events described here, Defendants Callahan and Livernois were policymakers for the purpose of creating and implementing the school's unconstitutional policies and practices.

70.     Jane Doe has suffered damages, including financial damages, emotional distress and psychological damage, damage to her education and career prospects, and her character and standing in the community have suffered, as a direct and proximate result of the defendants' deliberate indifference to her Fourteenth Amendment rights.

## COUNT IV
### *MONELL* LIABILITY AS TO DEFENDANT WARREN CONSOLIDATED SCHOOLS FOR FAILURE TO TRAIN AND SUPERVISE
### (14th Amendment)
### (42 U.S.C. § 1983)

71.     Paragraphs one through 70 are incorporated here.

72.     The individual defendants were state actors working for Warren Consolidated Schools, a federally funded school system.

18

73.     The individual defendants acted under color of law when they ignored Jane Doe's sexual assault and treated her as a discipline problem rather than as a victim.

74.     The individual defendants failed to preserve Jane Doe's constitutional rights to equal protection as guaranteed by the Fourteenth Amendment.

75.     Under the Fourteenth Amendment's equal protection clause, Jane Doe had the right to equal access to an educational environment free from harassment and discrimination.

76.     The individual defendants should have known that their response to sexual assault allegations must comply with federal law, including as outlined in Title IX's published and widely promulgated implementing regulations.

77.     The individual defendants violated Jane Doe's right to equal access by:

- failing to take necessary steps to protect Jane Doe;
- treating Jane Doe with deliberate indifference immediately following the sexual assault and during the months and years afterward; and
- failing to prove a safe, non-retaliatory grievance procedure for students to file complaints of sexual discrimination, including complaints of sexual violence.

78.     Defendant Warren Consolidated Schools violated Jane Doe's Fourteenth Amendment equal protection right by failing properly to train and supervise its employees as to these mandated investigative requirements.

79.     These policies and practices constituted disparate treatment of females and had a disparate impact on female students.

80.     Defendants' actions and lack of actions proximately caused Jane Doe's damages, including financial damages, emotional distress and psychological damage, damage to her education and career prospects, and her character and standing in the community have suffered.

WHEREFORE, Jane Doe requests judgment in her favor and against defendants, as follows:

A.     Compensatory damages for Jane Doe's emotional distress and psychological damage, loss of standing in her community, damage to her education, career, and reputation, and her family's unreimbursed out-of-pocket expenses incurred due to these circumstances;

B.     Punitive damages;

C.     Injunctive relief requiring Warren Consolidated Schools to take effective steps to prevent sexual assault, fully investigate conduct that may constitute sex-based harassment or sexual assault, and mitigate the effects of sex-based harassment or sexual assault by eliminating any hostile environment that may arise from or contribute to it;

D.     Statutory interest;

E.     Costs; and

F.     Reasonable attorneys' fees.

Dated: February 6, 2017          By:    <u>s/ Jennifer B. Salvatore</u>

Jennifer B. Salvatore (P66640)
Julie B. Porter (IL 6243787)
SALVATORE PRESCOTT &
PORTER, PLLC
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
*salvatore@spplawyers.com*
*porter@spplawyers.com*

## <u>DEMAND FOR JURY TRIAL</u>

NOW COMES Plaintiff, JANE DOE, through her next friend and by and through her attorneys, SALVATORE PRESCOTT & PORTER, PLLC, and hereby demands a jury trial in the above-captioned matter.


Dated:        February 6, 2017        By:        <u>s/ Jennifer B. Salvatore</u>

Jennifer B. Salvatore (P66640)
Julie B. Porter (IL 6243787)
SALVATORE PRESCOTT &
PORTER, PLLC
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
*salvatore@spplawyers.com*
*porter@spplawyers.com*